

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Wm. J. Lawson
Secretary of State
Austin, Texas

Attention:  O. P. Sanders
Analyst-Securities Division

Dear Sir:                      Opinion No. 0-4962
                               Re:  Article 925 Vernon's Revised
                                    Civil Statutes of Texas, 1936,
                                    relating to perpetual care of
                                    cemeteries.

        We are in receipt of your letter addressed to the
Attorney General of Texas, from which we quote in part:

        "The perpetual care law became effective
    March 15, 1934, and all cemeteries operating as
    perpetual care are required to lay aside a trust
    fund of 20¢ per square foot on all lots sold un-
    til the fund reaches $100,000 and thereafter 10¢
    per square foot.  We are in doubt as to whether
    cemeteries operating prior to 1934 and who are
    complying with the perpetual care law since 1934
    are required to build up their trust funds so as
    to show the proper reserve on footage sold prior
    to 1934 as well as after 1934.

        "Your opinion on this matter will be of great
    assistance to us in the future handling of perpe-
    tual care reports required to be filed in this of-
    fice annually."

        The importance of your question has resulted in a
very careful appraisal of the entire law governing the organ-
ization and operation of cemetery associations in the State
of Texas, as well as the public policy that prompted the Legis-
lature to amend Title 26, Vernon's Annotated Statutes, in Acts
1934, 43rd Legislature, 2nd Called Session, Chapter 66.

Article 925, Vernon's Annotated Statutes of Texas provides that

"Every cemetery association which has established and is now maintaining, operating and conducting a cemetery, and every association which shall hereafter establish, maintain, operate, and/or conduct a cemetery, within this State pursuant to this Act, is hereby authorized to establish . . . an irreducible fund for the general perpetual care of its cemetery and to place its cemetery under perpetual care. . . ."

This Article further provides that this trust fund "shall forever remain irreducible and inviolable", and shall be invested according to law, the net income from said investment to "be used solely for the general care, maintenance, and embellishment of the cemetery".

Article 925a requires that

"A perpetual care cemetery is one which shall hereafter deposit in its perpetual care fund as provided under the provisions of Article 925, an amount equivalent to a minimum of Twenty (20) Cents per square foot of ground of interment right sold or disposed of as perpetual care property for earth interment, until such fund reaches a minimum of One Hundred Thousand Dollars ($100,000.00), and the minimum thereafter shall be Ten (10) Cents per square foot; a minimum of Fifteen Dollars ($15.00) per each crypt interment right sold or disposed of as perpetual care property for mausoleum interment, and a minimum of Five Dollars ($5.00) per each niche interment right sold or disposed of as perpetual care property for columbarium interment. All other cemeteries heretofore operating as perpetual care cemeteries shall, within one year from the effective date of this Act, establish their trust funds in cash or legal securities in conformity with the provisions thereof, and in the event of failure so to do, shall not thereafter operate as a perpetual care or free care cemetery until the provisions hereof are complied with."

Article 925b requires each perpetual care cemetery to file in its office as well as the office of the Secretary

Honorable Wm. J. Lawson, Page 3

of State, a statement of the amount of principal of the perpetual care fund, the nature of the investment of the principal fund, the number of square feet of grave space, and the number of crypts, and a number of niches disposed of under perpetual care, prior to and subsequent to the enactment of this Article, each separately set forth.

Article 916 states that

"The terms 'cemetery association' and 'association' are herein used interchangeably and shall mean any corporation now or hereafter organized, or any association not operated for a profit, which is or shall be authorized by its articles to conduct any one or more or all of the businesses of a cemetery."

The question you present is whether cemetery associations, meaning corporations or non-profit associations operating as perpetual care cemeteries, must establish a trust deposit, as set forth in Article 925a, calculated upon sales of perpetual care interment property occurring before the passage of Article 925a in 1934, or merely upon all sales of such interment rights occurring after 1934?

Perpetual care cemetery contracts impose upon the cemetery association the enduring duty of forever caring for and properly maintaining the cemetery as a place of beautified sepulcher. Those who buy perpetual care cemetery rights often do so in their hour of bereavement thinking only of a suitable memorial to their deceased kinsmen, and are highly susceptible to the promises of a promoter. This unusual contract to be performed by the association perpetually, and the peculiar position of those who acquire the perpetual care interment rights, not only justifies but necessitates a rigorous control of perpetual care cemeteries by the State. To these ends, the Legislature has enacted Articles 925, 925a, 925b, designed to fulfill the contract obligation of cemetery associations, to protect those who purchase these rights, and to enforce suitable maintenance of the buildings and grounds for the benefit of the community in general.

Such legislation, without doubt, is constitutional and proper. "The State in the exercise of its police power has the right to provide for the establishment and discontinuance of cemeteries and to regulate their use." 14 Cor. Jur. Sec. 63, Section 2.

Furthermore those cemetery associations operating under the privilege of a corporate charter are subject to changing regulations and duties, for they take their corporate charter with the right expressly reserved to the State to "alter, reform, or amend". Article 1318, Vernon's Annotated Statutes. These regulations of cemetery corporations and associations can be supported, therefore, under the police power of the State; or under the reserved power of the State over corporations insofar as these regulations pertain to cemetery corporations.

The question is, therefore, shall these regulations be applied to those transactions, contemplated in Article 925, which occurred before the enactment of this Article as well as those occurring subsequent thereto? There is no language within these statutes, governing perpetual care cemeteries, indicating an intention of the Legislature to confine the application of these regulations to sales of lots occurring after the enactment in 1934. To the contrary, however, Article 925a provides,

"All other cemeteries heretofore operating as perpetual care cemeteries shall, within one year from the effective date of this Act, establish their trust funds in cash or legal securities in conformity with the provisions thereof, and in the event of failure so to do, shall not thereafter operate as a perpetual care or free care cemetery until the provisions hereof are complied with."

We deem it significant that Article 925a pertaining to the calculations of the trust deposits is couched in language of the past tense, to wit:

"A perpetual care cemetery is one which shall hereafter deposit in its perpetual care fund . . . an amount equivalent to a minimum of Twenty (20) Cents per square foot of ground of interment right sold or disposed of as perpetual care property for earth interment. . . .; a minimum of Fifteen Dollars ($15.00) per each crypt interment right sold or disposed of as perpetual care property for mausoleum interment, and a minimum of Five Dollars ($5.00) per each niche interment right sold or disposed of as perpetual care property for columbarium interment." (Underlining supplied)

Honorable Wm. J. Lawson, Page 5


Had the Legislature intended to limit the trust deposit to future sales of perpetual care property, language in the future tense, for example, 'which they will sell or dispose of', or 'sold hereafter', would have been appropriate.

The regulation of perpetual care cemeteries contemplates that the net income of the invested trust fund is to be used to maintain the entire perpetual care cemetery. If the fund was created only out of those perpetual interment rights sold after 1934 the burden on these lots, crypts, and niches, sold after 1934 would be onerous, inasmuch as the income of this fund would be used to finance the upkeep of the entire perpetual care property of the cemetery association. We think this was not the intention of the Legislature.

Article 1, Section 16, Constitution of the State of Texas provides:

"No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

While the Constitution of Texas clearly forbids the passage of retroactive laws, it is our opinion that the laws in question do not come within these constitutional prohibitions. There can be no doubt that the legislation in question would be constitutional if it required all cemeteries selling perpetual care rights to maintain a certain capital stock, or to create a trust fund of a certain amount determined by the size of the cemetery business, inasmuch as this type of regulation has been upheld in other fields of law as constitutional, notwithstanding the contention that such regulation impairs the obligation of a contract, and was unconstitutional as a retroactive law. In Jefferson County Title Guaranty Company v. Tarver, 29 S. W. (2) 316, the Commission of Appeals stated:

"We further hold that it is the settled law of this state and of the United States that a corporation such as this has no vested right in the privilege of doing a title guaranty business as a corporation and therefore suffers no loss of any vested right or property in a change in the statute law requiring larger capital stock to continue business in the state."

Honorable Wm. J. Lawson, Page 6

Also in Daniel v. Tyrrell and Garth Investment Company, 93 S. W. (2) 372, the Supreme Court of Texas stated:

"It is contended by Tyrrell and Garth that the rules and regulations promulgated by the Board (Insurance Commissioners) by authority of a law which became effective after the contract between it and the title company was entered into, cannot be applied so as to affect such previous contracts. We overrule this contention. The police power of the state to regulate the business of title insurance, as to forms of contracts and rates, cannot be contracted away by the title company."

16 Corpus Juris Secundum 417 states,

"On the other hand, despite their retroactive operation, statutes are upheld which have no adverse effect on vested or substantial rights, or merely regulate rights, (citing Daniel v. Tyrrell and Garth Investment Company, 93 S. W. (2) 213) or change their form, particularly where such legislation is in the proper exercise of police power, or which concerns the public interest or relates merely to government matters."

Likewise we deem the legislation in question to be constitutional as a prospective regulation rather than a retroactive regulation in its intent and scope, albeit transactions both prior and subsequent to the enactment of this legislation are considered in measuring the regulations imposed. This is a regulation prospective in character although predicated upon past as well as future sales of perpetual care interment right as a means of measuring the obligation imposed.

You are therefore advised that Articles 925 and 925a compel all cemetery associations desiring to continue business as perpetual care cemeteries, as defined in the Act, to build up a trust fund to the statutory reserve, calculated on footage, and/or crypt interments, and/or niche



Honorable Wm. J. Lawson, Page 7

interments rights sold prior to the enactment of these Articles, as well as those sold subsequent thereto.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By  *Benjamin Woodall*

Benjamin Woodall
Assistant

By  *Stewart W. DeVore*

Stewart W. DeVore

SWDV:mp

APPROVED DEC 18, 1942

ATTORNEY GENERAL OF TEXAS